IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MEGAN SPIDLE, INDIVIDUALLY AND AS NEXT FRIEND OF ▓▓▓▓▓ ▓▓▓▓▓▓▓▓ AS THE REPRESENTATIVE OF ALL STATUTORY WRONGFUL DEATH BENEFICIARIES OF KEVIN SPIDLE, DECEASED, INCLUDING GORDON AND AUDREY SPIDLE AND AS EXECUTRIX OF THE ESTATE OF KEVIN SPIDLE, DECEASED**<br><br>        **Plaintiffs**<br><br>**VS.**<br><br>**PENTAIR, INC. AND PENTAIR WATER POOL AND SPA, INC. A SUBSIDIARY PENTAIR, INC.**<br><br>        **Defendants** | § § § § § § § § § § § § § § § § § § § § § | **CIVIL ACTION NO. 4:15-cv-361** |

**PLAINTIFFS' ORIGINAL COMPLAINT**

1.      Megan Spidle, individually, as the next friend of ▓▓▓▓▓▓▓▓▓ minors, as the representative of all statutory wrongful death beneficiaries of Kevin Spidle, Deceased, including Gordon and Audrey Spidle, and as the Court approved Executrix of the Estate of Kevin Spidle, Deceased (hereafter also referred to a "Plaintiffs") files this complaint, in which all the above individuals join, complaining of PENTAIR, INC. (hereafter also referred to as Defendant) in its legal, assumed or common name, and for cause of action would show the Court the following:

## PARTIES – PLAINTIFFS

2. Megan Spidle is a citizen and domiciliary of Nova Scotia, Canada. She is the surviving spouse of Kevin Spidle, deceased and the court approved Executrix of the Estate of Kevin Spidle, deceased. She also is the natural mother of ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓.

3. ▓▓▓▓▓▓▓▓ is the natural, minor son of Keven Spidle, deceased. He is a citizen and domiciliary of Nova Scotia, Canada. Megan Spidle is bringing claims on behalf of this minor as his next friend.

4. ▓▓▓▓▓▓▓▓ is the natural, minor son of Kevin Spidle, deceased. He is a citizen and domiciliary of Nova Scotia, Canada. Megan Spidle is bringing claims on behalf of this minor as his next friend.

5. Gordon and Audrey Spidle are the natural parents of Kevin Spidle, deceased. They each are citizens and domiciliaries of Nova Scotia, Canada.

6. Each of the Plaintiffs is asserting claims for the wrongful death of Kevin Spidle, deceased. The above individuals are the only known statutory wrongful death beneficiaries of Kevin Spidle, deceased. Megan Spidle is the representative of all the statutory wrongful death beneficiaries of Kevin Spidle, deceased.

7. Megan Spidle is the surviving spouse of Kevin Spidle, deceased and the court approved Executrix of the Estate of Kevin Spidle, deceased. She also is the natural mother of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and is brining a survival action on behalf of the Estate of Kevin Spidle, deceased.

## PARTIES – DEFENDANTS

8. Defendant, Pentair, Inc. (hereafter also referred to as "Pentair") is a corporation organized under the laws of Minnesota. It has appointed a registered agent for service: Corporation Service Company, 2345 Rice Street, Suite 230, Roseville, MN 55113.

9. Defendant, Pentair Water Pool & Spa, Inc., a subsidiary of Pentair, Inc. is a foreign for-profit corporation licensed to do business in the State of Texas. It has appointed a registered agent for service and may be served with citation through such registered agent for service: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3136.

## JURISDICATION AND VENUE

10. Plaintiffs' damages, individually and jointly, exceed the jurisdictional limits of this court, excluding interest and costs. Each of the Defendants have engaged in continuous and systematic business in Texas and in the Houston Division and the incident in question arises from such business contacts.

11. Further, this Court has diversity, subject matter jurisdiction of this matter because there is a complete diversity between each and all of the Plaintiffs and Defendant.

12. Venue is proper in the Southern District of Texas, Houston Division as the incident giving rise to this action accrued in whole or in part in Fort Bend County, Texas. The product in question was sold by Pentair in Harris County and the incident in question occurred in Ft. Bend County.

## FACTS

13. On July 23, 2013, Kevin Spidle (hereafter also referred to as "Decedent") was found dead near the pool filter at his residence (4722 Deermeadow Falls Lane, Katy, TX 77494). At the time of his death, Kevin Spidle was 37 years of age.

14. The reported cause of death was accidental blunt force trauma to the head from contact with the top (also referred to as the "dome") of the pool filter.

15. The pool filter in question is a Pentair Clean and Clear Plus CCP520, P/N 160332, Serial No. 019613700085B (and hereafter also may be referred to as the "pool filter in question.").

16. The shell of pool filter in question consists of two pieces, a top half (the "dome") and a bottom half. A tension clamp or band goes around the diameter of the shell which holds the two pieces of the shell together if it properly secured by tightening a bolt on a screw which compresses a spring.

17. The top (the "dome") of the two piece, banded pool filter in question reportedly had violently separated from the base striking Kevin Spidle in the head causing him fatal injury (hereafter this event also will be referred to also as "the occurrence in question.").

18. Pentair reportedly has received and compiled reports of pool filters designed similar to the one in question (two piece, banded pool filters) violently separating during testing, operation, maintenance and service, resulting in property damage, personal injuries and death.

19. The pool filter in question, based upon the available circumstantial evidence, most likely violently separated and struck Decedent's head, resulting in Decedent's death.

20. No probable cause of the occurrence in question or the death of Kevin Spidle other than the pool filter violently separating and striking Decedent has been identified.

21. The pool on the property where the occurrence in question took place reportedly was constructed in June – September 2010 for the prior owner of the residence.

22. Neither the Plaintiffs nor the Decedent were involved in the selection or installation of the pool or pool filter.

23. It is believed that the Decedent experienced conscious pain and suffering as a result of the occurrence in question, prior to his demise.

## CAUSES OF ACTION
## STRICT PRODUCTS LIABILITY

24. At all times relevant to this lawsuit, Pentair was engaged in the business of manufacturing and selling pool filters such as the pool filter in question. Specifically, Pentair was involved, as part of its business, in selling or otherwise placing into the course of commerce, products similar to the pool filter in question by transactions that are essentially commercial in character.

25. Pentair researched, designed, assembled, manufactured, tested, inspected, marketed, and sold the pool filter in question.

26. At the time of the incident in question, the pool filter in question was in substantially the same condition as it was at the time it was placed into the stream of commerce by Pentair, and no material, unforeseeable alterations were made to the pool filter in question after it left the possession of Pentair.

27. There was no unforeseeable misuse of the product in question that was a substantial producing cause of the incident in question and Plaintiffs' damages in this case.

28. There was a design defect in the pool filter in question at the time the pool filter left the possession of Pentair that was a substantial producing cause of the incident in question and Plaintiffs' damages in this case.

29. Specifically, the pool filter in question was unreasonably dangerous as designed, taking into consideration the utility of the pool filter in question and the risk involved in its use.

30. Since the manufacture of the pool filter in question, Pentair has employed alternative design features to reduce the incidence of inadvertent separation of the pool filter. All such designs were technologically and economically available and feasible to employ prior to the manufacture and sale of the pool filter in question. These design features were alternative, safer designs that were available and technologically feasible to employ prior to the time the pool filter in question was designed, manufactured or placed in the stream of commerce.

31. Moreover, at the time the pool filter in question left Pentair's possession, there was one or more safer alternative designs other than the design used by Pentair in the pool filter in question which, without substantially impairing the pool filter's utility,

would have prevented or significantly reduced the risk of the incident in question, particularly the violent separation of the top (the "dome") of the pool filter from its base, that likely resulted in the Kevin Spidle's death and Plaintiffs' damages.

32. The alternative design(s) available at the time the pool filter in question left the possession of Pentair were both economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge at the time the pool filter in question left Pentair's control.

33. One such safer design, at all times relevant to this cause of action, was licensed to, owned, manufactured and sold by Pentair. This was the Sta-Rite System 3 (SYSTEM:3®) series of pool filters utilizing the Safe – Posi-Lok™ design.

34. Pentair has testified that at the time of the pool filter in question was placed in the stream of commerce, Pentair had acquired the Sta-Rite System 3 (SYSTEM:3®) series of pool filter utilizing the Safe – Posi-Lok™ design and all similar designs and concepts formulated, licensed by and owned by Sta-Rite by acquiring the company that owned the rights to the design and who manufactured it.

35. Pentair has stated in its own literature that the Sta-Rite (SYSTEM:3®) design is "the world's safest and easiest-to-operate pool filter."

36. Pentair's own records reveal that while it has received multiple reports over the years of pool filters designed such as the one in question violently separating during operation, maintenance or service, Pentair has never received a report of a Sta-Rite System 3 (SYSTEM:3®) pool filter violently separating and causing personal injury or death.

37. The pool filter in question and the Pentair Sta-Rite System 3 (SYSTEM:3®) pool filter are designed for the same purpose, the cost to manufacture is comparable, and the selling price of the two filters is comparable.

38. There are no applicable mandatory federal safety standards concerning any of the design defects in the pool filter in question for which claim is being made in this litigation.

39. Pentair, prior to the incident in question, was aware from prior reports, claims and litigation that the design of the pool filter in question was inherently and unreasonably dangerous.

40. Pentair further was aware that in the event of a violent separation, catastrophic injury or death had occurred in the past and probably could and would occur in the future.

**BREACH OF WARRANTY**

41. Pentair, by and through the sale of its products such as the pool filter in question, expressly and impliedly warranted to the public generally, and to Plaintiffs and Decedent specifically, that its products were fit for the purposes for which they were intended.

42. The pool filter in question manufactured and distributed by Pentair was unfit and unsafe for its intended uses and purposes, including use in residential pools because there was an inherent risk of the pool filter inadvertently and violently separating during operation, maintenance or service, and that such an event could occur even if the individual interacting with the pool filter believed that they had followed instructions about disassembly and assembly meticulously.

43. Pentair's breaches of the foregoing warranties were each a substantial, producing cause of Kevin Spidle's death and Plaintiffs' injuries and damages for which they are making claim.

## NEGLIGENCE

44. Pentair was negligent in the design of the pool filter in question. Pentair knew, or in the exercise of ordinary care, should have known, that the pool filter design was defective and unreasonably dangerous to those persons likely to interface or be in proximity to the pool filter during its operation, maintenance or service, and when used in the manner for which it was intended to be used.

45. Pentair owed Decedent and Plaintiffs the duty of reasonable care when it designed and sold the product in question, which it violated.

46. Pentair breached the duty of reasonable care owed to the Decedent and Plaintiffs in the following specific regards:

    a. Negligently designing the pool filter in question;

    b. Negligently testing the subject pool filter design or negligently failing to consider the results of its testing and testing to which it had access;

    c. Negligently failing to heed the results of claims, warranty claims and prior litigation and

    d. Negligently failing to stop selling and promoting the design in question, particularly after it acquired what it touted as a safer and easier to maintain design.

47. As a direct, proximate and substantial cause of Pentair's above-described negligence, Kevin Spidle was wrongfully killed and Plaintiffs sustained the losses at issue in this case.

## GROSS NEGLIGENCE

48. Pentair's negligent acts and/or omissions, as alleged above, were committed by or under the supervision of one or more of its vice-principals.

49. Alternatively, Pentair's negligent acts and/or omissions, as alleged above were approved or ratified by one or more of its vice-principals. 48. Pentair's negligent acts and/or omissions when viewed, separately and/or jointly, objectively from the standpoint of the actor at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to individuals interfacing with the pool filter in question or coming into proximity of the pool filter in question, such as the Decedent.

50. Pentair, by and through its vice-principals, had actual, subjective awareness of the risk involved with pool filter in question, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of individuals who could be expected to interface with the pool filter in question or come within proximity of it, such as the decedent.

51. As a direct, proximate and substantial cause of Pentair's gross negligence, Kevin Spidle was wrongfully killed and Plaintiffs sustained the losses at issue in this case.

## DAMAGES

52. Plaintiffs herein have sustained injuries and damages as a result of the defective products described above and/or as a result of the negligence and/or fault of Pentair in an amount, individually and together, within the jurisdiction of this Honorable Court.

53. Plaintiffs each seek actual damages for all their respective alleged damages from PENTAIR, as allowed pursuant to the Texas Wrongful Death Act §§ 71.001-71.004 Tex, Civ. Prac. & Rem. Code. While each of the Plaintiffs' claims for actual damages meets the jurisdictional limits of the court, Plaintiffs prefer to leave the precise amount of actual, compensatory damages to the sole determination of the jury, based upon the credible evidence presented at trial, without regard to sympathy, prejudice or bias.

54. Megan Spidle, as the surviving wife of Kevin Spidle, deceased, has sustained the following damages resulting from the wrongful death of her husband:

  A. Termination of the spousal relationship and loss of consortium. The positive benefits flowing from the love, guidance, counsel and support that Plaintiff would, in reasonable probability, have received from her spouse, Kevin Spidle, had the latter lived.

  B. Mental anguish suffered by Plaintiff as a result of the death of her spouse, Kevin Spidle, deceased, including, but not limited to, the emotional pain, torment, and suffering that Plaintiff will, in reasonable probability, experience in the future from the death of Kevin Spidle.

  C. Grief and bereavement in the past and which in reasonable probability will continue in the future, as a result of the wrongful death of Kevin Spidle.

  D. Loss of her spouse's services;

  E. Loss of her spouse's financial and/or pecuniary contributions in the past and such contributions that reasonable probability would have continued in the future.

55. ███████ a surviving, natural child of Kevin Spidle, deceased, has sustained the following damages resulting from the wrongful death of his father:

  A. Termination of the parent-child relationship and loss of companionship. The positive benefits flowing from the love, guidance, counsel and support that this Plaintiff would, in reasonable probability, have received from his father, Kevin Spidle, deceased, had the latter lived.

  B. Mental anguish suffered by this Plaintiff as a result of the death of his father, Kevin Spidle, including, but not limited to, the emotional pain, torment, and suffering that this Plaintiff will, in reasonable probability, experience in the future from the death of his father, Kevin Spidle.

  C. Grief and bereavement in the past and which in reasonable probability will continue in the future, as a result of the wrongful death of his father, Kevin Spidle.

  D. Loss of his father's services;

  E. Loss of his father's financial and/or pecuniary contributions in the past and his financial and/or pecuniary contributions which in reasonable probability would continue in the future.

56. ▇▇▇▇▇▇ a surviving, natural child of Kevin Spidle, deceased, has sustained the following damages resulting from the wrongful death of his father:

 A. Termination of the parent-child relationship and loss of companionship. The positive benefits flowing from the love, guidance, counsel and support that this Plaintiff would, in reasonable probability, have received from his father, Kevin Spidle, deceased, had the latter lived.

 B. Mental anguish suffered by this Plaintiff as a result of the death of his father, Kevin Spidle, including, but not limited to, the emotional pain, torment, and suffering that this Plaintiff will, in reasonable probability, experience in the future from the death of his father, Kevin Spidle.

 C. Grief and bereavement in the past and which in reasonable probability will continue in the future, as a result of the wrongful death of his father, Kevin Spidle.

 D. Loss of his father's services;

 E. Loss of his father's potential financial and/or pecuniary contributions in the past and his financial and/or pecuniary contributions which in reasonable probability would continue in the future.

57. Gordon and Audrey Spidle, as surviving natural parents of Kevin Spidle, deceased each seek the following damages:

 A. Loss of companionship and society. The positive benefits flowing from the love, guidance, counsel and support that these Plaintiffs each would, in reasonable probability, have received from their son, Kevin Spidle, had the latter lived.

B. Mental anguish suffered by each of these Plaintiffs as a result of the death of their son, Kevin Spidle, including, but not limited to, the emotional pain, torment, and suffering that these Plaintiffs each have experienced because of their son's death and which Plaintiffs each will, in reasonable probability continue to experience in the future from the death of Kevin Spidle.

C. Grief and bereavement each Plaintiff has experienced in the past and which in reasonable probability will continue in the future, as a result of the wrongful death of Kevin Spidle.

D. Loss of his Kevin Spidle's services;

E. Loss of Kevin Spidle's financial and/or pecuniary contributions in the past and his financial and/or pecuniary contributions which in reasonable probability would continue in the future.

58. The Estate of Kevin Spidle, Deceased, seeks the following damages

A. reasonable and necessary funeral and burial expenses;

B. damages for the mental anguish and terror Kevin Spidle experienced as a result of the occurrence in question; and

C. damages for the conscious pain and suffering Kevin Spidle experienced as a result of the injuries he sustained from the occurrence in question.

59. Plaintiffs each has alleged facts against Pentair that entitles each PLAINTIFF to recover exemplary damages to the full extent allowed by ART. XVI, §26 of the TEXAS CONSTITUTION and §41.003 *et seq.* of the TEXAS CIVIL PRACTICE AND REMEDIES CODE from Defendant. Accordingly, each PLAINTIFF entitled to seek punitive damages under the Texas Constitution seeks exemplary damages from Pentair to the full amount

allowed by Texas and U.S. Constitutional law. Plaintiffs each prefer to leave the precise amount of punitive damages to the sole determination of the jury, based upon the credible evidence presented at trial, without regard to sympathy, prejudice or bias. In assessing punitive damages against Pentair the jury should take into account the following considerations: 1) the nature of the defendant's wrong; 2) the character of the wrongdoer; 3) the degree of culpability of the wrongdoer; 4) the situation and sensibilities of the parties concerned; 5) the extent to which such conduct offends a public sense of justice and propriety; and 6) the net worth of the defendant. *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981) and §41.011 TEX. CIV. PRAC. & REM. CODE. The jury also should take into account the post incident conduct of Pentair, through its vice-principals, indicating ratification of the wrongful conduct leading to and that was a proximate cause of the occurrence in question, continuation of the policies and procedures and practices that were a proximate cause of the occurrence in question. Further in these regards, the jury may consider what it considers PENTAIR'S reprehensible conduct, if any.

60. Plaintiffs also plead for pre-judgment and post-judgment interest to the highest amount allowed by applicable law, jointly and severally or severally, as appropriate and for costs of Court.

## JURY DEMAND

61. Plaintiffs demand a trial by jury for all issues so triable.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be cited and required to answer herein accordingly to law, that this cause be set for trial

before a jury, that Plaintiffs each recover judgment of and from Defendant for the actual, compensatory, special damages and punitive damages pled in such a manner as the evidence may show and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which Plaintiffs may in law or in equity show themselves justly entitled.

Respectfully submitted,

**AVERSANO & GOLD**

*/s/ Paul N. Gold*

_____

**PAUL N. GOLD**
State Bar No. 08069700
pgold@agtriallaw.com
**DONNA M. AVERSANO**
State Bar No. 00783573
daversano@agtriallaw.com
933 Studewood, 2nd Floor
Houston, Texas 77008
(713) 426-5600 Telephone
(713) 426-5601 Facsimile

**THE ADAMS LAW FIRM, L.L.P.**
William K. Adams
State Bar No. 00793228
wka@adamslawfirm.com
23501 Cinco Ranch Blvd., Suite H205
Katy, Texas 77494-3288
(281) 391-9237 Telephone
(281) 391-0451 Facsimile

**ATTORNEYS FOR PETITIONER**